```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

SHERILLE S. HARRIS,              )
                                 )
        Plaintiff,                )
                                 )
     v.                          )    No. 4:06 CV 700 DDN
                                 )
JOHN E. POTTER,                  )
POSTMASTER GENERAL,              )
UNITED STATES POSTAL SERVICE,    )
                                 )
        Defendant.                )

## **MEMORANDUM**

This action is before the court on the motion of defendant John E. Potter, Postmaster General, for summary judgment. (Doc. 33.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 24.) A hearing was held on September 19, 2007.

## **I. BACKGROUND**

Plaintiff Sherille S. Harris brought this action for racial discrimination, gender discrimination, and retaliation against defendant John E. Potter, Postmaster General of the United States Postal Service (Postal Service), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Her complaint contains several different allegations of discrimination and retaliation. (Doc. 1.) On March 22, 2007, this court dismissed all but one of Harris's claims. (Doc. 30.) In her remaining claim, Harris alleges that two white, male employees received overtime hours, instead of her, for reasons motivated by racial discrimination, gender discrimination, and retaliation for past complaints. (Doc. 1; Doc. 30.)

## **II. UNDISPUTED FACTS**

Sherille Harris began working for the Postal Service in 1998. (Docs. 1, 13.) In August 2004, Harris was working as a distribution window clerk, with part-time flexible status, assigned to the Hazelwood, Missouri Post Office. (Doc. 34, Ex. A at 1.) The Hazelwood Post Office is a seat of the postmaster, and oversees operations at its office, the Maryland Heights Post Office, and the Bridgeton Post Office. Although Harris was assigned

to the Hazelwood Post Office, she did most of her work at the Maryland Heights Post Office. (Doc. 34, Ex. B at 1.)

Karla Rose, a white female, was a supervisor at Maryland Heights, overseeing - among others - Harris, Patrice Smith, Patrick Byrne, Richard Schlogl, and Diane Gorges. (Doc. 34, Ex. B at 1, Ex. E at 1, Ex. H at 2.) Patrice Smith, an African-American female, was another part-time flexible employee. (Doc. 34, Ex. B at 2; Doc. 35 at 5.) Patrick Byrne and Richard Schlogl, white males, were full-time regular employees. Diane Gorges was also a full-time regular employee. (Doc. 34, Ex. B at 2.) Dianne Hubbard, an African-American female, also worked at the Maryland Heights Post Office. She was a manager in charge of creating the work schedules. (Doc. 34, Ex. D. at 2-4.)

Hubbard planned to be out of the office during the week that included August 21, 2004, and therefore prepared the work schedule in advance. According to that work schedule, Harris was supposed to work at the Maryland Heights location on Saturday, August 21, 2004, starting at 7:00 a.m.[1] Smith and Gorges were also scheduled to work that day; Schlogl and Byrne were not. (Doc. 34, Ex. B at 2).

On August 20, 2004, Sonia Bequette, a supervisor at the Bridgeton and Hazelwood locations, contacted Karla Rose about finding someone to work the window clerk position at the Bridgeton location on August 21, 2004. (Doc. 34, Ex. B at 2, Ex. G at 2.) Under the union contract, full-time employees could not be sent to other post office locations; only part-time employees could be sent to cover at other locations. (Doc. 34, Ex. B at 2.) The union contract also stated that only full-time employees could sign up for the "overtime desired" list. Part-time employees were not eligible to participate in the "overtime desired" list. (Doc. 34, Ex. K at 2.) As part-time employees, both Harris and Smith had been called on to help the other two locations with their staffing needs. (Doc. 34, Ex. B at 3.)

Between Smith and Harris, the two available part-time flexible employees, Rose had already assigned Smith to work the dock on August 21,

---

[1] In her complaint, Harris claims that she was scheduled to begin work at 5:00 a.m. at the Maryland Heights location and that Karla Rose rescheduled her start time to 7:00 a.m. and then again to 8:30 a.m. (Doc. 1 at 5.) In its undisputed facts, the Postal Service states Hubbard originally scheduled Harris to begin working at 7:00 a.m. at the Maryland Heights location. (Doc. 34 at 2.) Harris does not dispute this in her reply. (Doc. 35 at 2.)

2004 - in part because Harris had worked the dock the two previous days. An employee who works on the docks must stay later than an employee who works at one of the windows. The worker assigned to the docks is termed the "late clerk." (Id.) Harris was therefore asked to cover at the Bridgeton location at 8:30 a.m. (Doc. 34, Ex. I at 2.)

Concerned about losing work hours by reporting to Bridgeton, Harris approached Denise McNeil, a supervisor at the Maryland Heights location, about going to the Bridgeton location at a different time. In response, McNeil told Harris she could start work at the Maryland Heights location at 7:00 a.m. and then report to the Bridgeton location at 8:30 a.m., so she would not lose any of her hours. Harris said she would not do that. (Id.)

On August 21, 2004, Harris did not go to the Maryland Heights location for 7:00 a.m. Instead, she reported directly to the Bridgeton location shortly after 8:30 a.m. (Doc. 34 at 4; Doc. 35 at 3.) While Harris was working at Bridgeton, Rose had Schlogl and Byrne come in to work at the Maryland Heights location. (Doc. 34 at 2; Doc. 34, Ex. N at 4.) While Harris was working at the Bridgeton location, Rose instructed Harris to report to the Maryland Heights facility after she had finished working at Bridgeton. Rose told Harris to report to Maryland Heights so she could pick up her extra hours. (Doc. 34, Ex. B at 3; Doc. 34, Ex. G at 2.)

Harris claims Schlogl and Byrne are similarly situated postal employees, and it was discrimination for them to receive the overtime hours at the Maryland Heights Post Office on August 21, 2004. (Doc. 34. at 5; Doc. 34, Ex. O at 8; Doc. 35 at 3.)

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material," if it could affect the ultimate disposition of the case, and a factual dispute is "genuine," if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving

party.  Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrate a genuine issue of material fact.  Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## IV.  DISCUSSION

In its motion for summary judgment, the Postal Service maintains that there are no genuine issues of material fact.  In particular, the Postal Service argues that Harris has failed to make a prima facie case of discrimination and retaliation under Title VII.  (Doc. 34.)  In response, Harris argues that she has made a prima facie case of discrimination and retaliation.  She also argues that the Postal Service assigned overtime hours to two white, male employees, even though the two men had not signed up on the overtime list.  (Doc. 35.)

**Racial and Gender Discrimination**

Title VII of the Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). A plaintiff complaining of discrimination may survive a motion for summary judgment in two ways.  Arraleh v. County of Ramsey, 461 F.3d 967, 974 (8th Cir. 2006), cert. denied, 127 S. Ct. 2100 (2007). First, the plaintiff may present direct evidence of discrimination.  Id. Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision.  Id.  This link must be sufficient to allow a reasonable fact finder to conclude that an illegitimate reason actually motivated the adverse employment action.  Id. If direct evidence is unavailable, the plaintiff may avoid summary judgment by creating an inference of unlawful discrimination under the Supreme

-4-

Court's McDonnell Douglas analysis. Id. at 975 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).

The McDonnell Douglas analysis consists of a three-prong burden-shifting analysis. Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th Cir. 2007). In the first prong, the plaintiff must establish a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). To establish a prima facie case of discrimination under Title VII, a plaintiff must show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. Devin, 491 F.3d at 789 (gender discrimination); Carpenter, 481 F.3d at 616 (racial discrimination).

Once a plaintiff has established a prima facie case of discrimination, the employer may rebut the plaintiff's case by articulating a legitimate, nondiscriminatory reason for its decision. Arraleh, 461 F.3d at 975. If the employer presents a nondiscriminatory reason for its decision, the plaintiff has the opportunity to demonstrate that the employer's offered reason is not the real reason for the employment decision. Id. at 975-76. Despite the burden shifting in McDonnell Douglas, the ultimate burden of proving intentional discrimination remains at all times with the plaintiff. St. Mary's Honor Ctr., 509 U.S. at 507.

Harris has failed to proffered legally sufficient evidence of a prima facie case of discrimination. In her complaint, Harris claims the decision to give Byrne and Schlogl, white males, unrequested overtime hours was driven by racial and gender animus. However, Byrne and Schlogl were not similarly situated Postal Service employees. Harris was a part-time flexible employee, who could be transferred between locations, as staffing needs required. Byrne and Schlogl were both full-time employees, who under the union contract could not be sent to other post office locations. Beyond that, only full-time employees could participate in the overtime desired list. The undisputed facts demonstrate that Byrne and Schlogl were not similarly situated employees. See Johnson v. Univ. of Iowa, 431 F.3d 325, 330 (8th Cir. 2005) (finding employees were not similarly situated because, most significantly, one was a full-time employee and the other was a part-time employee). Moreover, Harris has never alleged that any part-

-5-

time flexible employees were ever treated differently than she. Viewing all the evidence in the light most favorable to the plaintiff, Harris has failed to proffer legally sufficient evidence of a prima facie case of racial or gender discrimination.

**Retaliation**

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against any employee, because that employee has opposed an unlawful employment practice, "made a charge, testified, assisted, or participated in any manner of investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The anti-discrimination provision of Title VII seeks to create a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender status. Burlington N. & Sante Fe Ry. Co. v. White, 126 S. Ct. 2405, 2412 (2006). The anti-retaliation provision seeks to prevent an employer from interfering with an employee's efforts to secure the enforcement of Title VII's basic guarantees. Id.

In a retaliation case, a plaintiff may survive summary judgment by presenting direct or indirect evidence of discrimination. See Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006). Where direct evidence is unavailable, the McDonnell Douglas burden-shifting analysis governs. Id. As in the discrimination cases, the plaintiff bears the burden of establishing a prima facie case of retaliation. Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007). To show a prima facie case of retaliation, the employee must show: (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. Id. As in claims of discrimination, the employer may rebut an employee's prima facie case by showing a legitimate, nondiscriminatory reason prompted the adverse employment action. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). If the employer makes this showing, the plaintiff must prove the employer's stated reason was merely a pretext for illegal retaliation. Id.

Harris has clearly engaged in protected conduct. On July 2, 2001, September 25, 2001, and January 15, 2002, Harris filed complaints with the EEOC, alleging discrimination. (Doc. 16, Ex. D at 3; Doc. 16, Ex. G at 1.)

-6-

Filing an EEOC complaint constitutes protected conduct. Piercy v. Maketa, 480 F.3d 1192, 1198 (10th Cir. 2007).

While Harris can establish she engaged in protected conduct, she has not proffered substantial evidence that the scheduling changes were materially adverse. To be materially adverse, the employer's actions must be harmful to the point that they could dissuade a reasonable worker from making or supporting a charge of discrimination. White, 126 S. Ct. at 2409. This standard has a broader scope than the adverse action standard that governs discrimination claims. Id. at 2414. This standard also has a broader scope than the adverse action standard previously applied by the Eighth Circuit in retaliation claims. Id. at 2410, 2414-15 (abrogating the "more restrictive approach" applied by the Eighth Circuit). Under White, an adverse action extends beyond workplace-related or employment-related retaliatory acts and harm. Id. at 2414. The test refers to a reasonable employee because the standard for judging harm must be objective. Id. at 2415. Petty slights, minor annoyances, and simple lack of good manners do not rise to the level of a materially adverse action. Id. That said, context matters. Id. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." Id. For instance, changing an employee's work schedule might make little difference to many workers, but make an enormous difference to a young mother with school age children. Id. In judging retaliation, the reviewing court does not consider the underlying charge of discrimination. Id.

The denial of overtime hours can constitute an adverse employment action. Broska v. Henderson, 70 F. App'x 262, 267-68 (6th Cir. 2003); see also Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847-48 (9th Cir. 2004); Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1118 (11th Cir. 2001); Joens v. John Morrell & Co., 243 F. Supp. 2d 920, 947 (N.D. Iowa 2003) ("It seems clear to the court that denial of overtime hours, and hence overtime pay, would constitute an adverse employment action.") Reducing an employee's hours can also constitute an adverse employment action. Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 859 (8th Cir. 1998). That said, under the unequivocal circumstances of this case, no reasonable employee would have viewed the scheduling change of August 21, 2004, as a materially adverse action.

Under the union contract, only part-time flexible employees could be asked to cover at other post office locations. Full-time employees, like Schlogl and Byrne, could not be asked to cover at other locations. On August 21, 2004, Harris was one of two part-time flexible employees available to cover at the Bridgeton location. Smith, the other part-time flexible employee, had already been assigned to work the dock on August 21, 2004. Only Harris was available to be sent to the Bridgeton location, and in the past, Harris had gone to the other locations to help with their staffing needs. In other words, Harris was only being asked to perform her job duties. She did not receive a pay-cut, a demotion, or any other change in her working conditions. See Jones v. Fitzgerald, 285 F.3d 705, 714 (8th Cir. 2002) (declaring "a transfer or reassignment which involves only minor changes in working conditions and does not involve a reduction in pay or benefits does not constitute an adverse action.") Given the scheduling demands of the day and the restrictions on full-time employees created by the union contract, no reasonable employee would have viewed the scheduling changes as a materially adverse action.

Supervisors at the Postal Service also made efforts to allow Harris to recoup her hours. After expressing her concern about losing work hours, McNeil arranged for Harris to regain an hour and half of work time. Despite the offer to recoup her hours, Harris refused to do so. See Pitchford v. Potter, 72 F. App'x 506, 507 (8th Cir. 2003) (per curiam) (unpublished decision)(finding that "reduction of hours did not constitute an adverse employment action, given that [Postal employee] had refused offers of other work that would have provided him with the same number of hours.") Given her refusal to work the additional hours, it seems clear that Harris felt no objective threat of retaliation. As a result, the scheduling changes on August 21, 2004 would not have dissuaded a reasonable employee from making or supporting a charge of discrimination. Viewing the evidence in the light most favorable to Harris, a reasonable employee would not have found the award of overtime to Schlogl and Byrne to be materially adverse.

Finally, it is worth noting that Harris filed her most recent EEOC complaint in January 2002 - nineteen months before the events of August 2004. Causation - and the lack thereof - can sometimes be inferred from the timing of an adverse employment action. Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 915 (8th Cir. 2006). A gap in time between

the protected activity and the adverse employment action weakens the inference of retaliatory motive. Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1044 (8th Cir. 2007). The Supreme Court has noted that an action taken twenty months after the filing of an EEOC complaint "suggests, by itself, no causality at all." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) (per curiam). Viewing all the evidence in Harris's favor, she has failed to proffer legally sufficient evidence of a prima facie case of retaliation.

**Disability discrimination**

In her complaint to the EEOC, Harris claimed the actions of August 21, 2004 were the result of racial discrimination, gender discrimination, disability discrimination, and retaliation. (Doc. 34, Ex. C at 1.) In her complaint before this court, Harris only alleges "employment discrimination based on race and gender and for retaliation;" there are no claims for disability discrimination anywhere within the pending judicial complaint. (Doc. 1.) Nonetheless, the Postal Service and Harris each address the question of disability discrimination within their respective summary judgment memoranda. (Doc. 34 at 9; Doc. 35 at 7.) Because the claim has been raised in each of the respective memoranda, and the Postal Service has not argued a procedural defense, the issue of disability discrimination is properly before the court and therefore must be reviewed. Hedges v. Musco, 204 F.3d 109, 122 (3d Cir. 2000).

The Americans with Disabilities Act (ADA) prevents an entity from discriminating against a qualified individual because of her disability, with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In ADA cases, a plaintiff may survive summary judgment by presenting direct or indirect evidence of discrimination. Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1034 (8th Cir. 2007). Where direct evidence is unavailable, the McDonnell Douglas burden-shifting analysis governs. Id. Under the McDonnell Douglas approach, the plaintiff bears the burden of establishing a prima facie case of discrimination. Id. To show a prima facie case of disability discrimination, Harris must show: (1) she has a disability within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable

-9-

accommodation; and (3) she suffered an adverse employment action because of her disability. McPherson v. O'Reilly Auto., Inc., 491 F.3d 726, 730 (8th Cir. 2007).

Harris has not proffered substantial evidence that she has suffered an adverse employment action under the ADA. The language of Title VII's core anti-discrimination provision mirrors the language of the ADA's anti-discrimination provision. Cf. 42 U.S.C. § 12112(a) with 42 U.S.C. § 2000e-2(a)(1). In each case, the law proscribes discrimination against an employee with respect to her hiring, firing, compensation, and other "terms, conditions, [and] privileges of employment." 42 U.S.C. § 12112(a); 42 U.S.C. § 2000e-2(a)(1). Indeed, the Eighth Circuit has looked to Title VII retaliation and discrimination actions in defining an adverse employment action under the ADA. Burchett v. Target Corp., 340 F.3d 510, 518-19 (8th Cir. 2003) (citing Moisant v. Air Midwest, Inc., 291 F.3d 1028, 1031-32 (8th Cir. 2002) (Title VII retaliation case) and Spears v. Mo. Dep't of Corr. and Human Res., 210 F.3d 850, 854 (8th Cir. 2000) (Title VII retaliation case)); see also Cossette v. Minn. Power and Light, 188 F.3d 964, 971 n.6 (8th Cir. 1999) (citing Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 968-69 (8th Cir. 1999) (Title VII retaliation case) and Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997) (Title VII discrimination case)). Other circuits have also looked to Title VII cases in interpreting the adverse employment requirement of the ADA. E.g., Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1115 (7th Cir. 2001); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996) (noting "cases involving . . . Title VII are instructive in cases involving the ADA.").

Harris failed to proffer legally sufficient evidence that she suffered an adverse employment action under Title VII. That legal analysis is instructive here. See Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) ("courts have routinely used Title VII precedent in ADA cases."); Brown v. Brody, 199 F.3d 446, 456 n.10 (D.C. Cir. 1999); Kocsis, 97 F.3d at 885; see also Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 157 (3d Cir. 1995) ("the methods and manner of proof under [Title VII, the ADA, or the ADEA] should inform the standards under the others as well.") Since Harris was only being asked to do her job, and was given the opportunity to recoup her lost hours, she cannot demonstrate an adverse employment action under the ADA. Harris has therefore failed

to proffer legally sufficient evidence of a prima facie case of disability discrimination.

## V. CONCLUSION

For the reasons stated above, the motion of defendant John Potter, Postmaster General, for summary judgment is granted. An order in accordance with this memorandum is filed herewith.

/S/ David D. Noce<br>**UNITED STATES MAGISTRATE JUDGE**

Signed on October 10, 2007.